# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan D. Grine          :
         :
         v.          :    No. 854 C.D. 2015
         :
County of Centre,          :
The McShane Firm, LLC          :
and Theodore C. Tanski          :
         :
Appeal of: County of Centre          :

Kelley Gillette-Walker          :
         :
         v.          :    No. 855 C.D. 2015
         :    Argued: February 10, 2016
County of Centre,          :
Shubin Law Office, P.C.,          :
and Sean P. McGraw          :
         :
Appeal of: County of Centre          :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge


**OPINION**
**BY JUDGE SIMPSON**            **FILED: April 13, 2016**


       In these consolidated appeals, the County of Centre (County) appeals from the orders of the Court of Common Pleas of Centre County (trial court)[1] granting preliminary injunctive relief to Judge Jonathan D. Grine (Grine) and

---

[1] The Honorable Stewart Kurtz, a Senior Judge with the Huntingdon County Court of Common Pleas, specially presided.

Magisterial District Judge (MDJ) Kelley Gillette-Walker (Gillette-Walker), (collectively, the Judges). Specifically, the trial court enjoined the County from responding to requests submitted under the Right-to-Know Law (RTKL)[2] for "judicial records." It further directed the County to refer any requests for judicial records to the open records officer designated by the relevant judicial agency. The County argues the injunction precludes it from fulfilling its statutory duty under the RTKL. It contends the records at issue are public regardless of which agency receives the request. Upon review, we affirm the trial court's orders with modification.

## I. Background

The Judges filed complaints seeking declaratory and injunctive relief to enjoin the County from responding to RTKL requests for "judicial records" related to their activities. The trial court sealed the pleadings and issued special injunctions.

The litigation stems from the County's response to prior RTKL requests implicating cell phone usage by members of the unified judicial system and District Attorney Stacy Parks Miller (DA Miller). As to Gillette-Walker, the request sought "records of all telephone calls, text messages, instant messages, email … and/or any other form of electronic communication;" as to Grine, the request sought "all to and from cell phone/call records[,] and to and from text messages from [DA Miller and/or an assistant DA] and [Grine]." Reproduced Record (R.R.) at 85a, 87a (collectively, the "Prior Requests").

---

[2] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

Because the County paid the cellular telephone bills for the Judges' usage, and the County contracted with Verizon to provide cellular service, the requests were directed to the County Open Records Officer. The County had access to records, including invoices that contained usage of cellular phone services by the Judges (Phone Records). The Phone Records identified telephone numbers of callers and recipients of calls. The County responded to the Prior Requests without notifying the Judges or the trial court's open records officer. In granting access, the County released parts of the Judges' telephone numbers, and it created a color-coded spreadsheet that tracked cell phone usage between DA Miller and the Judges. Although the response disclosed communications occurred between DA Miller's telephone number and the Judges' numbers, the response did not reveal the content of the communications. The response also did not contain the cost of cellular services or include any dollar amounts.

In April 2015, the trial court consolidated the cases for a hearing on the preliminary injunctions. The County presented evidence establishing the following facts. The County contracted with Verizon for a bulk plan allowing for a reduced rate for wireless service. Under the plan, the County purchased minutes that it then distributed to various departments and individuals, including the trial court. Certain members of the judiciary, including Grine, used the County-paid plan. Gillette-Walker did not use the County-paid plan; she used her personal cell phone.

3

Relevant here, Grine testified regarding the Court's policy for handling RTKL requests. R.R. at 113a-14a. Any requests for records of a judicial agency are governed by Pennsylvania Rule of Judicial Administration (Pa. R.J.A.) 509. Id.

Ultimately, the trial court granted preliminary injunctive relief to the Judges. Specifically, the trial court "enjoined [the County] from making any response to any request made pursuant to the [RTKL] for judicial records relating to [Grine or Gillette-Walker]. The [County] shall direct any request received to the [Prothonotary or the District Court Administrator] for a response." Notice of Appeal, (Dkt. No. 854 2015), Ex. A; Notice of Appeal, (Dkt. No. 855 C.D. 2015), Ex. A.

In its initial opinion, the trial court held the Judges met the criteria for a preliminary injunction. It reasoned that records relating to activities of the Judges pertain to a judicial agency. Under the separation of powers doctrine, the County lacked jurisdiction to release the Phone Records. Tr. Ct., Slip Op., 5/7/15, at 9-10.

The County filed two appeals, one as to Grine and one as to Gillette-Walker. In response to the County's concise statement of the errors complained of on appeal, the trial court supplemented its opinion under Pa. R.A.P. 1925(a). Therein, the trial court emphasized it "did not pay attention to" the County's argument that the Phone Records were "of the [C]ounty … and financial records and thus public records under the RTKL." Tr. Ct., Slip Op., 6/26/15 at 6.

This Court consolidated the County's two appeals as to the Judges. However, we denied the County's motion to consolidate this matter with the appeals

involving records of DA Miller, docketed at Nos. 856 C.D. 2015 and 857 C.D. 2015. The Administrative Office of Pennsylvania Courts filed a friend-of-the-court brief aligned with the Judges. After briefing and oral argument, the matter is ready for disposition.

## II. Discussion

On appeal,[3] the County argues the preliminary injunction precludes it from providing the County's financial records, which are public as a matter of law. Essentially, the County contends there is no violation of a clear right necessitating a preliminary injunction because the Phone Records are public financial records.

The Judges counter that the trial court did not abuse its discretion in granting injunctive relief. The preliminary injunction ensures the County complies with the RTKL by directing any requests for records of the judiciary to the open records officer designated for the appropriate judicial agency. The Judges assert the Phone Records reflect communications of personnel of the unified judicial system, and they are not County records. As a result, the County violated the separation of powers doctrine by exercising control over records of the judiciary and responding to the Prior Requests.

This consolidated appeal underscores the dilemma agencies face when a RTKL request seeks records that document an activity of more than one agency.

---

[3] Appellate "review of a trial court's order granting … preliminary injunctive relief is 'highly deferential.'" Warehime v. Warehime, 860 A.2d 41, 46 (Pa. 2004) (citation omitted). "[I]n reviewing the [order], an appellate court is directed to 'examine the record to determine if there were *any apparently reasonable grounds* for the action of the court below.'" Id. (emphasis added).

5

The Phone Records document the County's payment for services as well as the Judges' use of services. The Judges do not dispute that financial records of a judicial agency are public.[4] Their concern lies with maintaining control over records of a judicial agency when they are in another branch's possession.

## A. Preliminary Injunction Standard

Our review of the trial court's orders "is limited to determining whether the trial court abused its discretion." Com. ex rel. Corbett v. Snyder, 977 A.2d 28, 41 (Pa. Cmwlth. 2009) (citing Summit Towne Centre v. Shoe Show of Rocky Mount, Inc., 828 A.2d 995 (Pa. 2003)). "An abuse of discretion is not merely an error in judgment … [r]ather, an abuse of discretion exists if the trial court renders a judgment that is [plainly] unreasonable, arbitrary or capricious, fails to apply the law, or was motivated by partiality, prejudice, bias or ill will." Id. "If the record supports the trial court's reasons and factual basis, the court did not abuse its discretion." Id. (citing Ambrogi v. Reber, 932 A.2d 969 (Pa. Super. 2007)). We also review the facts in the light most favorable to the party who prevailed at the trial court level. Snyder.

---

[4] At the outset, we emphasize that access to financial records of the Unified Judicial System is governed by Rule 509 of the Pennsylvania Rules of Judicial Administration. Pa.R.J.A. No. 509. The parties here do not ask us to distinguish between the provisions of that Rule and the very similar provisions of the RTKL which on their face refer to judicial agencies. We decline to embark on that journey uninvited. Similarly, we decline to explore on our own motion the interplay between the Rule and the RTKL statute. Instead, we will confine our analysis to the arguments raised by the parties, which refer almost exclusively to the RTKL.

A party must establish the following to obtain a preliminary injunction:[5]

> (1) necessity to prevent immediate and irreparable harm that cannot be adequately compensated by damages;
>
> (2) greater injury would result from refusing an injunction than from granting it;
>
> (3) an injunction will properly restore the parties to their status as it existed prior to the alleged wrongful conduct;
>
> (4) the right to relief is clear, and that the wrong is manifest, and success on the merits is likely;
>
> (5) the injunction is reasonably suited to abate the offending activity; and,
>
> (6) an injunction will not adversely affect the public interest.

Lutz v. City of Phila., 6 A.3d 669, 673 (Pa. Cmwlth. 2010); Greater Nanticoke Area Educ. Ass'n v. Greater Nanticoke Area Sch. Dist., 938 A.2d 1177, 1184 (Pa. Cmwlth. 2007) (citing Warehime v. Warehime, 860 A.2d 41 (Pa. 2004)).

"Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the [trial court]." Lutz, 6 A.3d at 673 (quoting Lee Publ'ns, Inc. v. Dickinson Sch. of Law, 848 A.2d 178, 183 (Pa. Cmwlth. 2004)). With these

---

[5] The County characterizes the injunction as mandatory because the trial court required the County to refer RTKL requests to the proper judicial agency. Requiring compliance with a statute does not transform a preliminary injunction into a mandatory one. See Patriot-News Co. v. Empowerment Team of Harrisburg Sch. Dist. Members, 763 A.2d 539 (Pa. Cmwlth. 2000).

7

principles in mind, we assess the trial court's conclusion that the Judges established the prerequisites for a preliminary injunction.

## 1. Clear Right

The Judges frame their right to relief in terms of compliance with the RTKL and preserving the judiciary's control over its records. In analyzing the clear right to relief element, we consider two aspects of the RTKL: (1) the substance or nature of a record; and, (2) the procedure or means of accessing a record.

## a. Record "of" an Agency; Substance of Record

The RTKL increased access from its predecessor statute[6] not only as to the types of records, but also by expanding the types of agencies subject to its terms. In addition to the Commonwealth and local agencies historically subject to open records laws, the current RTKL permits access to certain records of legislative agencies and judicial agencies. The RTKL offers the most limited access to records of a judicial agency.

Pursuant to the RTKL, a "judicial agency" is defined as, "[a] court of the Commonwealth or any other entity or office of the unified judicial system." Section 102 of the RTKL, 65 P.S. §67.102. As members of the judiciary, the Judges are part of a judicial agency. By contrast, the County qualifies as a local agency under the RTKL.

---

[6] Act of June 21, 1957, P.L. 390, formerly 65 P.S. §§66.1-66.9, repealed by, Section 3102 of the RTKL, 65 P.S. §67.3102.

We hold a record qualifies as "of" an agency when that record "documents a transaction or activity of the agency." Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc. (ASCI), 13 A.3d 1025, 1034-35 (Pa. Cmwlth. 2011) (en banc); see Meguerian v. Office of Attorney Gen., 86 A.3d 924 (Pa. Cmwlth. 2013). "Documents" means "proves, supports [or] evidences." ASCI.

Only financial records "of" a judicial agency are subject to the RTKL. Section 102 of the RTKL defines "financial records" in pertinent part as: "any account, voucher or contract dealing with: (i) the receipt or disbursement of funds by an agency; or (ii) an agency's acquisition, use or disposal of services, supplies, materials, equipment or property." 65 P.S. §67.102. The definition of public record includes financial records. Id. The RTKL does not permit access to *non*-financial records of a judicial agency.

At the other end of the spectrum, all records in the possession of Commonwealth and local agencies are presumed public. Section 305(a) of the RTKL, 65 P.S. §67.305(a). Pursuant to the presumption of openness, Commonwealth and local agencies are required to provide access to any record to which an exemption does not apply. Section 701 of the RTKL, 65 P.S. §67.701. Section 102 of the RTKL defines the term "record" broadly as: "Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency…." 65 P.S. §67.102 (emphasis added).

9

In discerning whether records qualify as records "of" a particular agency, we consider the subject-matter of the records. Meguerian; see also Office of Atty. Gen. v. Phila. Inquirer, 127 A.3d 57, 63 (Pa. Cmwlth. 2015) ("For emails to qualify as records "of" an agency, we only look to see if the subject-matter of the records relate to the agency's operations."). The location of the record or an agency's possession does not guarantee that a record is accessible to the public; rather, the character of the record controls. Easton Area Sch. Dist. v. Baxter, 35 A.3d 1259 (Pa. Cmwlth. 2012). A record does not need to be generated by the agency receiving a RTKL request to qualify as "of" that agency. Bagwell v. Dep't of Educ., 76 A.3d 81 (Pa. Cmwlth. 2013).

In arguing that the records at issue are not "of" the judiciary, the County emphasizes the records must relate to "an exercise of judicial authority." Appellant's Br. at 28. Repeatedly, the County claims that in order to qualify as records of a judicial agency, their content must be "judicial in nature." Id. at 33. There is no legal basis for defining the limitation that way. Rather, we evaluate whether a record documents an agency's activity or operations. Here, the activity is use of cellular phone services. The Prior Requests sought records that showed the use of cellular phones by and between DA Miller and the Judges. Responsive records would include the records showing the billing and payment of invoices for cellular phone services.

The County contends that as the agency that pays the invoices for the use of services, it is the sole agency whose activities are documented by responsive

10

records. Some cases decided under the predecessor to the RTKL relate to this contention. But, after closer examination, those decisions do not control the current controversy.

The RTKL is designed to afford greater access than its predecessor, resulting in "a dramatic expansion of the public's access to government documents." Levy v. Senate of Pa., 65 A.3d 361, 381 (Pa. 2013). Nevertheless, cases decided under the predecessor statute remain relevant to analyzing the RTKL. Thus, citing cases decided under the predecessor statute, our Supreme Court recently construed the term "financial records" to reach any records "dealing with" the disbursement of agency funds. Eiseman v. Dep't of Pub. Welfare, 125 A.3d 19 (Pa. 2015).

Under the predecessor statute, this Court held itemized cellular telephone bills met the definition of public record as "accounts or vouchers and the use of public equipment and funds." PG Publ'g Co. v. Cnty. of Washington, 638 A.2d 422 (Pa. Cmwlth. 1994); see also Tribune-Review Publ'g Co. v. Bodack, 875 A.2d 402, 405 (Pa. Cmwlth. 2005), aff'd, 961 A.2d 110 (Pa. 2008) (itemized cell phones are public records when the detail shows "how the total amount is arrived at[.]"). Significantly, that part of the definition of public record under the predecessor statute is virtually identical to the definition of "financial record" in the current RTKL.

Indeed, in PG Publishing, this Court held records documenting a county's payment of telephone bills were public records. Relevant here, we also

11

held the itemized cell phone bills were records the paying county had a duty to disclose. See PG Publ'g, 638 A.2d at 426 (holding "all bills or statements which contain an itemization regarding how the total amount is arrived at is an integral part of the final bill without which payment would probably not be made.").

In Bodack, similar to the Prior Requests, the request under the predecessor statute sought cell phone records of public officials. Also akin to the Prior Requests, the requester sought identifiers of callers and recipients, i.e., telephone numbers of incoming and outgoing calls. The City of Pittsburgh initially paid the phone bills, but the officials subsequently reimbursed the City. We held the officials' reimbursement did not negate the disbursement of public funds, which rendered the records public. Again, we held the City had a duty to disclose.

Critically, however, the County's reliance on these cases is selective. Although both cases support the proposition that an agency must disclose records documenting payment of phone bills, the County disregards that the records at issue in those cases did not reveal activities of the judiciary or any other agency.

Further, the County does not acknowledge the redactions from the records in Bodack. Regarding the telephone numbers contained in responsive records, the Bodack Court held the callers and recipients of calls had an expectation of privacy in their personal telephone numbers. That information

12

placed the individual's identity at risk for identity theft.  As a result, we held the telephone numbers must be redacted from any records disclosed.[7]

Our reasoning in Bodack to protect caller identifiers is consistent with our case law construing the current RTKL.  In Office of the Governor v. Raffle, 65 A.3d 1105 (Pa. Cmwlth. 2013) (en banc), we held government-issued cellular telephone numbers of agency employees are "personal identification information" under Section 708(b)(6)(i)(A) of the RTKL.  That subsection protects:

> (A) A record containing all or part of a person's Social Security number; driver's license number; personal financial information; home, cellular or personal telephone numbers; personal e-mail addresses; employee number or other confidential personal identification number.

65 P.S. §67.708(b)(6)(i)(A) (emphasis added).  That the agency issued the telephones and paid for cellular service did not alter our conclusion that telephone numbers assigned to specific agency employees constituted personal identifiers.  As a result, telephone numbers were properly redacted from responsive records.

These cases teach us that records of an agency's usage of cellular phone services are financial records to the extent they contain information dealing with the disbursement of agency funds.[8]  Nevertheless, we reject the County's

---

[7] Notably, the predecessor statute lacked an exception that protected cellular or personal telephone numbers as in Section 708(b)(6)(i)(A) of the RTKL, 65 P.S. §67.708(b)(6)(i)(A).

[8] The County did *not* have a duty to disclose the identifiers of callers or recipients.  Office of the Governor v. Raffle, 65 A.3d 1105 (Pa. Cmwlth. 2013) (en banc); Tribune-Review Publ'g Co. v. Bodack, 875 A.2d 402 (Pa. Cmwlth. 2005), aff'd, 961 A.2d 110 (Pa. 2008).  The County **(Footnote continued on next page…)**

13

argument that records showing DA Miller's use of cellular phone services constitute a financial record *solely* of the County.

Here, the Phone Records involve the usage of cellular phone services by the Judges. The County concedes the records document the Judges' activities in that they reveal their identities as the caller or recipient. See Appellant's Br. at 22. However, to some extent the Phone Records also document the County's payment of Verizon invoices for service. As such, the Phone Records are simultaneously "of" the judicial agency and "of" the County.

### b. Separation of Powers; Procedures for Access

The dual status of the records as documenting activities of the County and of the judicial agency is central to this dispute. The RTKL affords different levels of access to *any* non-exempt records of a local agency, such as the County, but it allows access *only* to financial records of a judicial agency. Adding to the complexity, the trial court enjoined the County from responding to requests for "judicial records," a term which is not defined in the RTKL. For clarity[9] and

---

**(continued…)**

may discharge its duty to disclose financial records by providing redacted records. Section 706 of the RTKL, 65 P.S. §67.706. Although the County explains the duration of calls relates to the amount of the invoices, the County does not connect the identities of callers or recipients to the cost of services.

[9] Also, our courts often use the term "judicial records" when discussing the openness of the courts and records to which a common law right of access attaches. Com. v. Upshur, 924 A.2d 642 (Pa. 2007); Stenger v. Lehigh Valley Hosp. Ctr., 554 A.2d 954 (Pa. Super. 1989).

14

consistency with RTKL terminology, we recast this phrase as "records of a judicial agency."

### i. <u>Lackawanna County CCP</u>

We previously addressed a conflict involving a request for records to which a county and a judicial agency shared access in <u>Court of Common Pleas of Lackawanna Cnty. v. Office of Open Records (Lackawanna County CCP)</u>, 2 A.3d 810 (Pa. Cmwlth. 2010). There, the Administrative Office of Pennsylvania Courts (AOPC) filed an action in our original jurisdiction premised on a violation of the separation of powers doctrine.[10]

AOPC sought a declaration that the Office of Open Records (OOR) lacked jurisdiction over a RTKL appeal pertaining to records of a judicial employee.[11] AOPC argued Lackawanna County could not be ordered to respond to the RTKL request despite its access to responsive records on county-provided computers. Ultimately, we concluded that Lackawanna County's possession of the records did not alter that the records pertained to activities of a judicial employee. Relevant here, we held "any record produced by a judicial employee is a record of a judicial agency." <u>Id.</u> at 813.

To preserve the separation of powers, a requester was unable to access records of activities of a judicial employee by seeking the records through a county. <u>Id.</u> Allowing another agency to direct a judicial employee violated the separation

---

[10] PA. CONST. art. 5, §10 (providing the Supreme Court's general supervisory authority).

[11] The employee who sent or received the emails requested was a judicial employee under the Judicial Code as "staff assigned to the domestic relations office." 42 Pa. C.S. §961.

15

of powers because it interfered with the judiciary's oversight and supervision of judicial employees. The trial court applied the same rationale here.

The trial court here reasoned that records relating to activities of the Judges pertained to members of the unified judicial system. Such activities are under the exclusive oversight of our Supreme Court. Following Lackawanna County CCP, the trial court concluded records documenting the Judges' use of cell phone services were not accessible through the County. In so doing, the trial court did not err or abuse its discretion.

The County attempts to distinguish Lackawanna County CCP because that case involved the content of communications of a judicial employee, and content is not at issue here. However, our holding that records of a judicial employee are records of a judicial agency, and so beyond OOR's jurisdiction, did not depend on the content of the records. Our rationale was based on the need for the judiciary to retain supervisory control over its personnel.

### ii. Assertion of No Harm

Nevertheless, we consider the County's assertion that the allegedly innocuous content of the records requested is material to whether the County retains a duty of disclosure under the RTKL. In essence, because the RTKL mandates access to financial records of a judicial agency, the County contends there is no harm in the County responding to a request for financial records that are both of a judicial agency and of the County. See Appellant's Br. at 46 ("Telephone billing records are financial records that are required to be disclosed under the

16

RTKL, regardless of whether they are determined to be records 'of' the judiciary or the County."). We respectfully disagree, based on our analysis of the distinctive procedures access.

The public nature of a record, relating to content, is distinct from public access. Ali v. Phila. City Planning Comm'n, 125 A.3d 92 (Pa. Cmwlth. 2015) (explaining public nature of a record, related to content, under Section 306 of the RTKL, 65 P.S. §67.306, is distinct from public access under Section 3101.1 of the RTKL, 65 P.S. §67.3101.1). The procedure for handling requests and appeals depends on the type of agency. See generally Sections 503, 701, 1101 and 1102 of the RTKL, 65 P.S. §§67.503, 67.701, 67.1101, 67.1102. Stated differently, even when the same record, like a financial record, is requested under the RTKL from two different types of agencies, the process for access may follow different paths.

### iii. Differences in Process for Access

The RTKL allows each type of agency to develop its own policies and regulations for handling requests. Section 504(a) of the RTKL, 65 P.S. §67.504(a). Specifically, Section 504(a) of the RTKL provides, "[a]n agency may promulgate regulations and policies necessary for the agency to implement [the RTKL]. The [OOR] may promulgate regulations relating to appeals involving a Commonwealth agency or local agency." Id. Such policies may be necessary to fill statutory gaps. See, e.g., Pa. State Educ. Ass'n v. Dep't of Cmty. & Econ. Dev. (PSEA), 110 A.3d 1076 (Pa. Cmwlth. 2015) (en banc), appeal filed, (Pa., No. 22 MAP 2015, filed March 24, 2015) (providing due process for third-party subjects of records to object to disclosure to uphold statutory scheme).

17

However, only the Supreme Court is empowered to adopt procedural rules pertaining to judicial agencies. 42 Pa. C.S. §1722 (the Supreme Court may adopt procedural rules involving "the administration of all courts and the supervision of all officers of the judicial branch …."). As permitted by Section 504(a) of the RTKL, our Supreme Court adopted Pa. R.J.A. 509 which governs responses to RTKL requests directed to judicial agencies. R.R. at 113a; see also Grine Ex. No. 7. Rule 509 provides uniformity and consistency among responding judicial agencies. Further, the memorandum accompanying Rule 509 states "access to financial records … of the unified judicial system shall be provided in accordance with Pa. R.J.A. 509." Id.

A judicial agency that receives a request for financial records has a duty to provide access to them in accordance with the law. Indeed, the Judges do not contest that cell phone records in the format produced by Verizon are financial records that are subject to disclosure. Still, that does not end the inquiry.

Judicial agencies may review requests to discern whether the requested records qualify as financial records that are subject to disclosure. By contrast, a local agency must presume the requested record is public and respond knowing it bears the burden of proving an exemption applies. The presumption does not apply to a judicial agency until it is established that the record meets the definition for financial records. Section 305(b) of the RTKL, 65 P.S. §67.305(b). These different approaches may lead to substantively different responses to the same RTKL request.

Other provisions in the RTKL also allow an agency to exercise discretion in responding to a request. For example, Section 506(c) of the RTKL authorizes agencies to exercise their discretion "to make any otherwise exempt record accessible for inspection and copying." 65 P.S. §67.506(c). The RTKL precludes such discretionary disclosure only if disclosure is prohibited by another law, judicial order, or the record is privileged. When no such prohibition exists, the "agency head" may provide for disclosure if he or she "determines that the public interest favoring access outweighs any individual, agency or public interest that may favor restriction of access." Id. Thus, an agency may release certain records or parts of records in its discretion, resulting in varied responses.

Also, an agency may create a record in order to ease review of requested information. See Section 705 of the RTKL, 65 P.S. §67.705. Further, an agency may redact protected information from a record and disclose the public portions. Section 706 of the RTKL, 65 P.S. §67.706. These options in implementing the RTKL illustrate the importance of directing a RTKL request to a concerned agency.

Here, the County did not disclose its contract with Verizon for cellular phone services. It also did not disclose the pertinent pages of the 500-plus page detailed Verizon invoice corresponding to Judge Grine. Rather, it created a color-coded spreadsheet showing calls between the Judges and the DA's office. Each color corresponded to a different individual, one of the Judges or DA Miller and her staff.

19

Further, the County did not redact the Judges' telephone numbers in their entirety. It chose to release information that exceeded financial parameters of an itemized cell phone bill. Bodack. The records disclosed did not contain content of communications, but they also did not contain any indication of cost or other financial information.

Had the Phone Records solely been records "of" the County, the County would have been authorized to create a record (Section 705) and selectively redact the records disclosed (Sections 706 and 506(c)). However, the Phone Records showing usage of services by the Judges are also of the judicial agency. As a result, the County misapplied the RTKL in responding.

Of special significance, the RTKL also sets forth a separate appeals process for each branch of government. An appeal from a judicial agency is addressed by an appeals officer designated by the judicial agency. Section 503(b) of the RTKL, 65 P.S. §67.503(b). As to local agencies like the County, the RTKL confers jurisdiction on appeals officers within OOR to render determinations regarding records disputes. Section 503(a) of the RTKL, 65 P.S. §67.503(a). However, OOR lacks jurisdiction over appeals involving records of a judicial agency. Faulk v. Office of Open Records, 116 A.3d 1183 (Pa. Cmwlth. 2015). Indeed, allowing OOR to direct an agency to disclose a record showing activities of a judicial agency violates the separation of powers. Lackawanna County CCP. Accordingly, for the County to respond to a request for records of a judicial agency would implicate an additional separation of powers issue in the appeal. Id.

### iv. Summary

In short, based on the options available to responding agencies, and the different procedures and presumptions that apply, the type of agency to which a RTKL request is directed matters. The County thus ignores the critical role the type of agency plays in handling RTKL requests and the resulting disclosure.

Moreover, the RTKL provides a mechanism for redirecting requests to an appropriate agency. Pursuant to Section 502(b) of the RTKL, an open records officer "shall receive requests submitted to the agency under [the RTKL], <u>direct requests to</u> other appropriate persons within the agency or to <u>appropriate persons in another agency</u>" when responding to RTKL requests. 65 P.S. §67.502(b) (emphasis added). The RTKL thus mandates an open records officer direct a request to another agency when records are "of" another agency.

Considering the foregoing, the Judges established a clear right to relief to ensure the judiciary retains control over records showing the activities of uniform judicial system personnel. The trial court did not err in determining the County's Open Records Officer, who knew the Phone Records pertained to the judiciary, was required to direct the request to the open records officer designated by the judicial agency for a response pursuant to Section 502(b) of the RTKL.

21

To avoid a potential separation of powers violation, the trial court properly enjoined the County from responding to requests for records "of" a judicial agency. Regardless of whether responsive records are simultaneously of a county and of a judicial agency, a county must defer to the judicial agency for a response. Here, because the Phone Records document activities of judicial personnel, which was clear on the face of the Prior Requests, the RTKL mandates the County Open Records Officer direct the request to the appropriate judicial agency. Lackawanna County CCP.

For these reasons, the trial court did not err in finding the Judges established a clear right to relief.

## 2. Irreparable Harm

The harm[12] articulated here is a violation of the statutory scheme in the RTKL and a potential violation of the separation of powers. Further, both Judges voiced concerns that the County's continued provision of access to records of their activities compromises the judiciary's record management. R.R. at 113a-17a.

Courts of this Commonwealth have the inherent right and power to supervise or discharge personnel and that power may not, consistent with the constitutional doctrine of separation of powers, be policed, encroached upon or

---

[12] On the point of harm, we note a factual distinction between MDJ Gillette-Walker's and Judge Grine's cases. Judge Grine's phone usage is documented in a record that is shared between the County and the Court. However, MDJ Gillette-Walker is not a user of the County plan. As a result, she does not appear on the Verizon invoices.

22

diminished by another branch of government.  See L.J.S. v. State Ethics Comm'n, 744 A.2d 798 (Pa. Cmwlth. 2000).  Moreover, "[e]very court has supervisory power over its own records and files[.]" Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978).

Deprivation of a statutory right constitutes irreparable harm.  Wyland v. West Shore Sch. Dist., 52 A.3d 572, 583 (Pa. Cmwlth. 2012) (citing Pa. Pub. Util. Comm'n v. Israel, 52 A.2d 317 (Pa. 1947)); Patriot-News Co. v. Empowerment Team of Harrisburg Sch. Dist. Members, 763 A.2d 539 (Pa. Cmwlth. 2000)).  Further, an agency's failure to comply with an open government statute is sufficiently injurious to constitute irreparable harm.  Patriot-News Co. (granting injunction to prevent violation of Sunshine Act, 65 Pa. C.S. §§ 701–716).

In addition to a violation of the statutory scheme in the RTKL, a potential separation of powers violation, and interference with the judicial agency's power of supervision over its records, the County's initial disclosure of the color-coded spreadsheets improperly disclosed partial telephone numbers.  Under Raffle, the Judges' cell phone numbers are protected from disclosure pursuant to the personal identification exception.  Under Section 708(c) of the RTKL, "an agency may redact that portion of a financial record protected under subsection … [(b)(6)]."  65 P.S. §67.708(c).  The RTKL "directs agencies to use redaction in appropriate circumstances," including to protect personal identifiers.  Lutz, 6 A.3d at 674.  This additional problem contributes to our harm analysis.

The harm is not speculative because the County received other requests implicating records of the judiciary. R.R. at 107a. Responses to those requests are held in abeyance based on the preliminary injunctions here. Id.

Because the harm described above is not compensable by damages, the trial court did not err in holding the Judges showed irreparable harm.

**B. Remaining Prerequisites for Preliminary Injunction**

Having addressed the clear right and irreparable harm elements, we consider whether the Judges met the remaining requirements for preliminary injunctive relief.[13]

Injunctive relief is appropriate in these circumstances. See, e.g., PSEA (holding declaratory judgment and injunctive relief appropriate given statutory gaps in RTKL as to parties with an interest in non-disclosure of a record); see also Sapp Roofing Co., Inc. v. Int'l Sheet Metal Workers' Ass'n, 713 A.2d 627 (Pa. 1998) (plurality) (appeal from grant of injunction precluding school district from disclosing certified payrolls of contractors). An injunction is suitable to mandate compliance with a statute as in this case. Wyland; Patriot-News.

Likewise, the preliminary injunction, as modified, is tailored to obtain the desired relief. The injunction assures that requests for records of a judicial agency are directed to the appropriate judicial agency. The County remains free to

---

[13] Because the County did not brief the other elements, we address them summarily.

disclose financial records of the County that are not also records showing activities of a judicial agency, and thus comply with the RTKL.

We are persuaded that greater injury will result from denial of the injunction than from granting it. It is clear on the record that the County received and will continue to receive RTKL requests relating to activities of the judiciary. R.R. at 107a. Those requests must be directed to the appropriate open records officer to ensure the judiciary retains control of its records and of the format in which the records are disclosed.

As the trial court recognized, the injunction does not restore the parties to the status quo. However, we cannot allow the County to continue to separately respond to RTKL requests when the records at issue are shared by a judicial agency. The preliminary injunction properly precludes the County from continuing to jeopardize the judiciary's control over its records by responding with over-inclusive information, which may not be limited to financial records.

## III. Conclusion

To avoid a potential separation of powers violation, the County Open Records Officer shall direct requests for records of a judicial agency to the designated open records officer for that judicial agency. Accordingly, the trial court's entry of a preliminary injunction to that effect is affirmed.

The trial court's order necessitates clarification in that it requires requests for "judicial records" to be redirected to a judicial agency. We affirm the trial court's order with modification to replace the phrase "judicial records" with the phrase "records of a judicial agency." We also reinforce the public status of financial records of a judicial agency.[14]

ROBERT SIMPSON, Judge

Judge Cohn Jubelirer did not participate in the decision in this case.

---

[14] In stating that "financial records of the judiciary are not included in the definition of public record," the trial court erred. Reproduced Record (R.R.) at 94a (Tr. Ct. Memorandum Op., 5/7/15, at 12). Financial records of the judiciary are public records under the RTKL. Sections 102 and 305(b) of the RTKL, 65 P.S. §§67.102, 67.305(b). As such, they are subject to mandatory disclosure *by a judicial agency*. Section 304(a) of the RTKL, 65 P.S. §67.304(a). However, the trial court's erroneous statement of the law was not essential to its conclusion.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jonathan D. Grine          :
                                  :

           v.            :    No. 854 C.D. 2015
                                  :

County of Centre,        :
The McShane Firm, LLC   :
and Theodore C. Tanski   :
                                  :

Appeal of: County of Centre :

Kelley Gillette-Walker   :
                                  :

           v.            :    No. 855 C.D. 2015
                                  :

County of Centre,        :
Shubin Law Office, P.C.,  :
and Sean P. McGraw    :
                                  :

Appeal of: County of Centre :

## O R D E R

**AND NOW**, this 13th day of April, 2016, the orders of the Centre County Court of Common Pleas are hereby **AFFIRMED AS MODIFIED**, as set forth in the foregoing opinion.

 

                                      _____

                                      ROBERT SIMPSON, Judge